**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| RACHEL MONIQUE ODEN<br>1154 Hardesty Blvd<br>Akron, Ohio 44320<br><br>and,<br><br>RACHEL MONIQUE ODEN as Parent, Legal Guardian, of JANE DOE, a Minor,<br>1154 Hardesty Blvd<br>Akron, Ohio 44320<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC., *a Delaware corporation*<br>702 SW 8th Street<br>Bentonville, AR 72716<br><br>and<br><br>TIMOTHY CHASE ALLEN, individually and in his capacity as Loss Prevention Officer for Walmart Inc.<br>1 Massillon Marketplace Drive, SW<br>Massillon, Ohio 44646<br><br>Defendants. | Case No.<br><br>JUDGE:<br><br>**COMPLAINT AND JURY DEMAND** |

## NATURE OF THE ACTION

This is a civil action arising from Walmart Inc.'s false, racially motivated accusation that Rachel Monique Oden — a law-abiding Black woman who had lawfully purchased and fully paid for a television through Walmart's own online ordering system — had stolen that very merchandise. The facts supporting this action are stark and unrebutted: Walmart's own automated fulfillment system processed Ms. Oden's payment, confirmed her order, and generated a curbside pickup label bearing her

surname "R. ODEN," her unique order number (2000140-14237260), and a date-time stamp of "01-Dec 11:33 AM." A Walmart employee physically affixed that label to the television box as part of Walmart's standard curbside pickup fulfillment process. On December 4, 2025, Ms. Oden arrived at the Walmart Massillon Supercenter and retrieved the television — her television — in a box bearing her own name, placed there by Walmart's own employee.

Despite the undeniable, visible, and irrefutable evidence of Ms. Oden's lawful purchase displayed on the face of the product itself — evidence generated entirely by Walmart's own systems and personnel — Defendant Timothy Chase Allen, Walmart's Loss Prevention Officer, proceeded the following day to report Ms. Oden to law enforcement as a suspected thief. Allen told police that "a female passed all points of purchase with a TV that she did not purchase." This statement was not an honest mistake. Allen knew, or was willfully blind to, the fact that Ms. Oden had purchased the television: Walmart's own payment systems confirmed her purchase, her name was on the box, and the order label connected her specifically and unmistakably to a completed, paid online transaction. Allen's false report was made with actual malice — a deliberate or recklessly indifferent disregard of known facts establishing Ms. Oden's innocence.

The consequences of Allen's and Walmart's malicious conduct were devastating. Ms. Oden was arrested in front of her eleven-year-old daughter, Jane Doe, detained in jail for approximately five and one-half (5.5) hours, booked and processed as a criminal, and subjected to a criminal prosecution lasting nearly eight months. The criminal charges were ultimately dismissed with a handwritten notation on the dismissal entry confirming that "Defendant paid for the item online." Plaintiffs bring this action to hold Walmart accountable for its reckless, discriminatory, malicious, and tortious conduct

and to obtain full compensation for the profound, lasting harm inflicted upon them both.

## PARTIES

1. Plaintiff Rachel Monique Oden is an adult individual and a citizen of the State of Ohio, residing in Stark County, Ohio. Ms. Oden brings this action individually and as the parent, legal guardian, and next friend of her minor daughter, Jane Doe.

2. Plaintiff Jane Doe is a minor child, approximately eleven (11) years of age at the time of the events alleged herein, and a citizen of the State of Ohio. Jane Doe brings this action through her mother and legal guardian, Rachel Monique Oden. Jane Doe's full name is withheld to protect her privacy as a minor pursuant to Fed. R. Civ. P. 5.2(a)(3).

3. Defendant Walmart Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Bentonville, Arkansas. At all times relevant hereto, Walmart Inc. owned, operated, and managed the Walmart Massillon Supercenter located at 1 Massillon Marketplace Drive SW, Massillon, Ohio 44646. Walmart Inc. may be served through its registered agent for service of process in Ohio at 300 Spruce Street, Floor 1, Columbus, Ohio 43215.

4. Defendant Timothy Chase Allen is an adult individual and, upon information and belief, a citizen of the State of Ohio, residing at or near 842 Dunning Road, New Franklin, Ohio 44614. At all times relevant hereto, Allen was employed by Walmart Inc. as a Loss Prevention Officer at the Massillon Supercenter and was acting within the course and scope of his employment with Walmart Inc. Allen is

sued in both his individual capacity and in his official capacity as Walmart's Loss Prevention Officer. To the extent Allen acted outside the course and scope of his employment, he is individually liable for the tortious conduct alleged herein. Walmart Inc. is vicariously liable for all acts of Allen committed within the course and scope of his employment.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' claims arising under 42 U.S.C. § 1981.
6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) over claims between Plaintiff Rachel Oden, a citizen of Ohio, and Defendant Walmart Inc., a Delaware corporation with its principal place of business in Arkansas, inasmuch as the parties are completely diverse and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.
7. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy as the federal claims asserted herein.
8. Venue is proper in the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Massillon, Stark County, Ohio.

## GENERAL FACTUAL ALLEGATIONS

### A. Ms. Oden's Lawful Online Purchase and Walmart's Confirmation

9. On or about December 1, 2025, Ms. Rachel Monique Oden placed an online order through Walmart.com for one (1) ONN 43-inch Class 1080P FHD Powered by VIZIO Smart Television, Model WFD43S-0830, at a purchase price of Eighty-

Nine Dollars ($89.00), plus applicable Ohio sales tax of Five Dollars and Seventy-Nine Cents ($5.79), for a total of Ninety-Four Dollars and Seventy-Nine Cents ($94.79). The order was assigned Order Number 2000140-14237260.

10. Ms. Oden completed and paid for this transaction in full through Walmart.com, using her Huntington Bank debit card ending in 6854. The total charge of $94.79 was processed and confirmed by Walmart's own payment systems and subsequently posted to Ms. Oden's Huntington Bank account as a debit card purchase from "WALMART.COM." At the moment the payment was processed and confirmed, Walmart's own systems contained irrefutable, real-time proof that Ms. Oden was a paying customer.

11. Ms. Oden selected curbside pickup at the Walmart Massillon Supercenter, 1 Massillon Marketplace Drive SW, Massillon, Ohio 44646, as her fulfillment method.

12. At all times relevant hereto, Walmart's own internal records — including its online ordering system, transaction history, payment records, and inventory management databases — contained complete and accurate confirmation that Ms. Oden had lawfully purchased and fully paid for the television in question. Any Walmart employee with access to the store's order management system, point-of-sale system, or curbside pickup application could have verified Ms. Oden's paid purchase in seconds.

13. Critically, as a direct product of Walmart's own curbside fulfillment process, a Walmart employee generated and affixed a curbside pickup label to the television's packaging. That label, printed and applied by Walmart's own personnel as part of its standard order fulfillment operations, displayed Ms.

Oden's surname ("R. ODEN"), her order number (2000140-14237260), a time-stamp of "01-Dec 11:33 AM," and other pickup identification information in plain, visible text on the exterior of the box. This label was Walmart's own unambiguous documentation that the merchandise had been purchased by Ms. Oden, placed on the box by Walmart's own employee, and was awaiting collection by its rightful owner. The label constituted direct, visible, incontrovertible evidence of lawful purchase visible to any person who looked at the box.

14. The presence of the curbside pickup label bearing Ms. Oden's name and order number — generated automatically when her online order was processed and placed on the box by Walmart's own employee — conclusively demonstrates that Walmart's own systems had confirmed, processed, and approved her purchase before she ever set foot in the store. Any Walmart Loss Prevention Officer who encountered Ms. Oden with a box bearing her own name label was on direct, contemporaneous notice that she was a paying customer collecting her own property.

**B. The December 4, 2025 Pickup and Allen's Confrontation**

15. On December 4, 2025, at approximately 11:50 a.m., Ms. Oden arrived at the Walmart Massillon Supercenter to retrieve the television she had lawfully purchased and fully paid for via Walmart's own online ordering system.

16. Ms. Oden's eleven-year-old daughter, Jane Doe, was present with her mother throughout the events described herein.

17. Defendant Timothy Chase Allen, acting in his capacity as Walmart's Loss Prevention Officer, confronted Ms. Oden in connection with her retrieval of the television. At the time of his confrontation, Allen was, or should have been, aware

that the television's packaging bore a curbside pickup label displaying Ms. Oden's name and order number — a label generated by Walmart's own systems and placed on the box by Walmart's own employee, directly linking the television to a confirmed, paid online transaction.

18. At no time prior to making the false theft report described herein did Allen or any other Walmart employee conduct any reasonable investigation into whether Ms. Oden had purchased the television. A simple review of Walmart's own internal records — readily accessible to any Walmart employee and available at any in-store terminal or handheld device — would have immediately and unequivocally confirmed that Ms. Oden's Order No. 2000140-14237260 was a fully paid, completed online transaction for the precise television she was collecting. Allen did not conduct even this most basic of inquiries.

19. Upon information and belief, Allen physically observed the curbside pickup label bearing Ms. Oden's name and order number on the television box during or prior to the confrontation. Notwithstanding this visible evidence of lawful purchase — evidence created by Allen's own employer — Allen proceeded to report Ms. Oden to law enforcement as a suspected thief. Allen's decision to report Ms. Oden to police despite the existence of visible exculpatory evidence on the face of the merchandise constitutes actual malice: Allen either knew his accusation was false, or deliberately refused to investigate evidence directly before him that conclusively established its falsity.

**C. Allen's False, Malicious, and Knowingly Unfounded Report to Law Enforcement**

20. On December 5, 2025, at approximately 1:13 p.m., Defendant Allen contacted the Massillon Police Department and caused Massillon Police Department Officer MA163 Richards to be dispatched to the Walmart Massillon Supercenter.

21. Upon arrival, Officer Richards spoke with Allen, who, acting as Walmart's duly authorized agent, reported to police that "a female passed all points of purchase with a TV that she did not purchase." This statement was factually false, wholly unverified, made without any reasonable factual basis, and made with actual knowledge or reckless disregard of facts — including the curbside pickup label bearing Ms. Oden's own name on the television box — that conclusively refuted any theft claim.

22. The Massillon Police Department opened Field Case Report No. 2025-00031119, classifying the incident as Larceny/Theft (Misdemeanor) under R.C. § 2913.02, based solely on Allen's false and unverified report. No independent investigation was conducted by Walmart prior to the filing of that report. The police relied entirely on Allen's false statement in initiating the criminal process against Ms. Oden.

23. Allen's false report described the alleged victim as Walmart, Inc., and listed the purportedly stolen property as one (1) Black 43-inch Onn TV valued at $89.00 — the precise television Ms. Oden had purchased and whose box bore her own name, placed there by Walmart's employee as part of Walmart's own fulfillment process.

24. Allen's false report was made with actual malice. "Actual malice" in this context means that Allen made the statement either knowing it was false or with reckless disregard for its truth or falsity. Allen had constructive and actual knowledge of

the facts establishing Ms. Oden's lawful purchase through each of the following independent bases: (a) Walmart's own online order management system contained real-time, accessible confirmation of Order No. 2000140-14237260 as a fully paid, completed transaction; (b) Walmart's payment processing system had successfully processed Ms. Oden's $94.79 debit card payment; (c) Walmart's own employee had generated and affixed a curbside pickup label bearing Ms. Oden's name and order number to the television box as part of Walmart's standard fulfillment process; and (d) the television box visibly bore Ms. Oden's name at the time of Allen's confrontation and report. The availability of all of this information — particularly the name label placed by a Walmart employee on the very item Allen accused Ms. Oden of stealing — makes it impossible to characterize Allen's report as anything other than knowing falsity or willful blindness to readily apparent exculpatory facts. Either characterization constitutes actual malice.

25. Neither Allen nor any other Walmart employee or agent made any attempt to verify the accuracy of the theft allegation against Ms. Oden before, during, or after reporting it to law enforcement. This failure to investigate is itself evidence of malice: when a person possesses accessible exculpatory evidence and makes no effort to consult it before making a damaging accusation, their conduct goes beyond carelessness and reflects a conscious decision to accuse without regard for truth.

26. Upon information and belief, the false accusation of theft was motivated, at least in part, by racial bias and the racially discriminatory application of Walmart's loss prevention practices to Black customers, including Ms. Oden. Allen's

decision to suspect, confront, and ultimately report Ms. Oden — a young Black woman — as a thief despite visible, on-box proof of her lawful purchase is consistent with a documented pattern of retail loss prevention practices that disproportionately target Black customers for suspicion of theft in the absence of objective evidence of criminal conduct.

**D. Ms. Oden's Arrest, Detention, and Jailing**

27. As a direct and proximate result of Walmart's false report to law enforcement, Ms. Rachel Monique Oden was arrested.

28. Ms. Oden's eleven-year-old daughter, Jane Doe, was present and witnessed her mother being confronted by police, accused of theft, physically restrained, and taken into police custody.

29. Ms. Oden was detained in jail for approximately five and one-half (5.5) hours. She was subjected to the humiliating, traumatic, and invasive process of being booked, fingerprinted, photographed, and processed as a criminal — all for conduct she never engaged in and for a crime she did not commit.

30. Ms. Oden's arrest and detention were caused and initiated solely by Walmart's false, reckless, and malicious report of theft to the Massillon Police Department — a report that contradicted facts known to Walmart through its own systems and reflected in the label Walmart's own employee had placed on the television box.

31. During the period of Ms. Oden's detention, Jane Doe was deprived of the society, companionship, care, guidance, comfort, and presence of her mother. Jane Doe witnessed traumatic events — her mother's public accusation, physical restraint, and removal by law enforcement — and was left without parental support during

a period of acute distress. The deprivation of her mother's presence, society, and parental care and protection caused Jane Doe distinct and cognizable harm, separate and apart from her emotional distress, constituting actionable loss of parental consortium.

**E. The Criminal Prosecution**

32. Following her arrest, criminal charges of Theft (Misdemeanor) in violation of R.C. § 2913.02 were filed against Ms. Rachel Monique Oden in the Massillon Municipal Court, Stark County, Ohio, Case No. 2026-CRB-00029.

33. Ms. Oden was compelled to retain defense counsel, appear in court, and defend herself against Walmart's baseless accusations over a period of approximately seven to eight months.

34. Throughout the pendency of the criminal case, Walmart's false report and the resulting criminal charges hung over Ms. Oden, causing her severe and ongoing emotional, reputational, and financial harm. The public nature of the criminal charge placed Ms. Oden before the public as a thief — a characterization that was false and that both Allen and Walmart knew or should have known was false based on facts entirely within their possession.

**F. Favorable Termination: Dismissal and Sealing of Record**

35. On July 21, 2026, the Massillon Municipal Court, Honorable Judge Andrea M. Scassa presiding, entered a Dismissal Journal Entry Without Prejudice in Case No. 2026-CRB-00029, dismissing all criminal charges against Rachel Monique Oden. The Massillon Prosecutor, Christopher Pace, entered a *nolle prosequi* noting that the dismissal was entered for good cause shown, including the fact —

noted in handwriting on the dismissal journal entry — that "Defendant paid for the item online."

36. On the same date, July 21, 2026, the Massillon Municipal Court entered an Order Granting Application Sealing Record of Dismissal, finding that: the complaint in this case was dismissed; there is no criminal proceeding pending against the defendant; the sealing of the defendant's record is consistent with the public interest; and the interests of the defendant in having the official records pertaining to the case sealed outweigh the legitimate needs of the government to maintain those records. The court ordered that all official records pertaining to this case be sealed and all indexed references deleted, that the proceedings be deemed not to have occurred, and that the defendant be restored to all rights and privileges not otherwise restored by the sealing.

37. The dismissal and sealing of the criminal record constitute a termination of the criminal proceedings in Ms. Oden's favor, affirmatively confirming her innocence of any theft or criminal wrongdoing. The handwritten notation that "Defendant paid for the item online" confirms that the very information Walmart possessed and chose to ignore — the fact of Ms. Oden's paid online purchase — was the reason for the dismissal.

**<u>G. Walmart's Purported Trespass Ban and Failure to Disclose</u>**

38. During post-incident communications between counsel, Defendant Walmart Inc., through its claims representative, indicated the existence of a purported "lifetime ban" prohibiting Ms. Oden from Walmart premises.

39. Ms. Oden, through counsel, expressly denied having received any notice of a lifetime ban. Ms. Oden's counsel advised that she could produce court

documentation reflecting, at most, a one-year restriction on contact with Walmart — a materially different restriction from a lifetime ban.

40. Walmart has refused to produce any documentation substantiating the existence, scope, terms, or legal basis of any purported lifetime ban, with Walmart's claims representative stating he does not have the authority to provide such documentation.

41. Critically, to the extent any restriction existed, Walmart's own online ordering system and payment infrastructure accepted Ms. Oden's online order, processed her payment in full, confirmed the transaction, generated a curbside pickup label bearing her name, and assigned her a curbside pickup order without any notification that she was subject to any access restriction. By accepting Ms. Oden's order and payment, generating fulfillment documentation in her name, and inviting her to collect merchandise, Walmart either waived any prior restriction or owed her a duty — as the counterparty to a completed consumer transaction — to fulfill the lawful transaction without subjecting her to false arrest.

42. In any event, the Loss Prevention Officer reported Ms. Oden to police specifically for alleged theft of merchandise she purportedly "did not purchase" — not for trespassing. The criminal prosecution was for theft under R.C. § 2913.02. Any trespass issue was wholly distinct from and does not excuse or justify the false theft accusation, arrest, imprisonment, and prosecution that followed.

## <u>H. Settlement Negotiations and Walmart's Inadequate Response</u>

43. Following the dismissal of the criminal case, Plaintiffs, through counsel, submitted a formal demand for settlement to Walmart Inc. Walmart, through its

claims representative Brandon Utt, Senior Analyst Claims Litigation for Walmart Claims Services, Inc. (Claim No. 26237141), acknowledged the claim and opened an investigation.

44. On or about August 13, 2026, a telephone conference was conducted among Plaintiffs' counsel, Walmart's claims representative, and Ms. Oden. During that conference, Plaintiffs presented photographic evidence of the curbside pickup label on the television box, bearing Ms. Oden's name and her order number (2000140-14237260). Rather than promptly acknowledging liability, Walmart continued to minimize its conduct.

45. On August 19, 2026, Walmart's representative acknowledged receipt of the demand and stated that Walmart does not believe the demand reflects the value of the claim. Walmart requested documentation of claimed damages.

46. On August 20, 2026, Plaintiffs submitted an Amended Settlement Demand Letter. On August 21, 2026, Walmart offered Five Thousand Dollars ($5,000.00) as full and final settlement of all claims arising from the incident — a sum that is patently inadequate and demonstrably fails to account for the gravity of Walmart's tortious, malicious, and racially discriminatory conduct and the extent of Plaintiffs' damages.

47. Ms. Oden rejected Walmart's inadequate $5,000.00 offer, and negotiations broke down. This lawsuit followed.

**<u>I. Damages to Plaintiff Rachel Oden</u>**

48. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Rachel Oden has suffered substantial, ongoing, and severe damages, including but not limited to:

(a) Wrongful arrest, detention, and imprisonment for approximately 5.5 hours;

(b) The humiliation, degradation, and trauma of being handcuffed, booked, fingerprinted, and photographed as a criminal in front of her minor child;

(c) The pain and suffering caused by being publicly and falsely accused of theft as a young Black woman in a commercial establishment, based on a report Allen made despite observable proof of her innocence on the face of the merchandise;

(d) Criminal prosecution lasting approximately seven to eight months, including mandatory court appearances and the attendant anxiety, stress, and disruption to her daily life;

(e) Severe and ongoing emotional distress, including hypervigilance, anxiety, and traumatic stress responses triggered by the sight of police vehicles and law enforcement officers;

(f) Harm to her reputation and dignity resulting from the false and public accusation of theft;

(g) Past and future costs of psychological counseling, therapy, and mental health treatment;

(h) Lost wages and economic harm resulting from court appearances, detention, and disruption to her employment;

(i) Costs and attorneys' fees incurred in defending against the criminal prosecution;

(j) Loss of the society, companionship, comfort, and normal parental relationship with her daughter, Jane Doe, who has been severely traumatized by Defendants' conduct; and

(k) Such other and further damages as shall be proven at trial.

**J. Damages to Plaintiff Jane Doe**

49. Jane Doe, Ms. Oden's eleven-year-old daughter, was physically present and directly observed her mother being publicly confronted, falsely accused of theft, and arrested in a public commercial establishment. Jane Doe suffered and continues to suffer severe emotional distress and loss of parental consortium as a direct and proximate result of these events.

50. Jane Doe is an African American child who, at the time of the incident, was eleven years of age. Research, clinical data, and empirical evidence establish that Black children in America are uniquely and acutely susceptible to severe and lasting psychological trauma from witnessing their parents' encounters with law enforcement. See *Carter v. United States*, 341 A.3d 1067 (D.C. App. 2025) (recognizing that Black individuals are especially apprehensive around police, that this fear is objectively reasonable given well-documented statistical and historical realities). See also *United States v. Knights*, 989 F.3d 1281, 1305 (11th Cir. 2021) (Rosenbaum, J., concurring) (collecting evidence that Black Americans are 2.5 times more likely to be shot and killed by police than white Americans). Jane Doe's terror at watching her mother be accused, restrained, and taken away by police was not merely subjective — it was an objectively reasonable response

to a genuinely dangerous and traumatic encounter, made acute by her identity as a young Black girl in America.

51. As a direct and proximate result of Defendants' conduct, Jane Doe has suffered and continues to suffer:

(a) Acute psychological trauma from witnessing her mother's wrongful arrest in a public place;

(b) Nightmares, sleep disruption, and intrusive recollections of the incident;

(c) Heightened fear, anxiety, and hypervigilance in the presence of law enforcement, in retail stores, and in public spaces generally;

(d) Developmental and psychological harm that is likely to persist into adolescence and adulthood with lasting negative consequences for her mental health, educational performance, interpersonal relationships, and quality of life;

(e) Emotional harm arising from the erosion of her sense of safety and security in public spaces, and her internalization of the message communicated by Defendants' racially discriminatory conduct — that Black people, including her mother, are presumed to be criminals;

(f) Loss of parental consortium, including loss of the society, companionship, comfort, guidance, and loving parental presence of her mother during and after the events described herein, as Ms. Oden's severe emotional trauma has impaired her ability to provide the full measure of parental care, guidance, and support she would otherwise have provided;

(g) Past and future costs of psychological counseling, therapy, and mental health treatment; and

(h) Such other and further damages as shall be proven at trial.

## CAUSES OF ACTION

### COUNT I
### FALSE ARREST
### (All Plaintiffs Against All Defendants)

52. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

53. Under Ohio law, false arrest is the unlawful restraint of a person's freedom of movement by another without legal authority or justification. *Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St.3d 107, 109 (1991). A private party who causes an arrest by making a false report to law enforcement is liable for false arrest even though the physical arrest is carried out by a police officer, provided the private party's false report was the proximate cause of the arrest.

54. Defendant Allen, acting within the course and scope of his employment with Defendant Walmart Inc. and with Walmart's express or implied authorization, caused Ms. Oden to be arrested by falsely and maliciously reporting to law enforcement that she had committed theft of a television she "did not purchase."

55. Allen's report to police was knowingly or recklessly false. At the time Allen made his report: (a) Walmart's own internal systems contained real-time, complete confirmation of Ms. Oden's paid purchase, Order No. 2000140-14237260; (b) a curbside pickup label bearing Ms. Oden's name — generated and affixed by Walmart's own employee — appeared on the television box; and (c) Allen had or should have had access to all of this information as a Walmart Loss Prevention

Officer. No reasonable Loss Prevention Officer exercising even minimal professional care would have reported theft under these circumstances. Allen's failure to make even a cursory inquiry into facts entirely within his employer's own systems, when he was confronted with a consumer standing next to a box bearing her own name placed there by his own employer, demonstrates actual malice rather than simple negligence.

56. Ohio's shopkeeper's privilege, R.C. § 2935.041(A), does not immunize Walmart from liability. The privilege requires that the merchant have probable cause to believe that items offered for sale have been unlawfully taken, and that any detention be conducted in a reasonable manner. Walmart possessed no probable cause: its own records, systems, and the visible curbside label directly contradicted any reasonable belief that Ms. Oden had committed theft. The privilege cannot shield a defendant who reports a customer to police for stealing merchandise that the defendant's own systems confirm was purchased, and whose box bears the customer's name placed there by the defendant's own employee.

57. The arrest of Ms. Oden was without legal justification, probable cause, or proper basis. It directly and proximately caused harm to both Ms. Oden and Jane Doe. Jane Doe was present, witnessed the arrest, and was immediately deprived of the society and presence of her mother.

58. Defendants acted with actual malice, entitling Plaintiffs to both compensatory and punitive damages. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the damages described herein.

**COUNT II**
**FALSE IMPRISONMENT**
**(All Plaintiffs Against All Defendants)**

59. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

60. False imprisonment is the unlawful detention of a person against that person's will and without lawful justification. *Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St.3d 107, 109 (1991). A person who causes false imprisonment by providing false information to law enforcement is as liable as the officer who carries out the detention.

61. As a direct and proximate result of Defendants' false report to police, Ms. Oden was confined in a detention facility against her will for approximately five and one-half (5.5) hours, without lawful justification. She was denied her freedom of movement and subjected to booking, fingerprinting, and processing as a criminal. This unlawful confinement was caused, initiated, and maintained by Defendants' knowing, reckless, and malicious conduct in reporting Ms. Oden as a thief when Walmart's own records, systems, and the label on the television box demonstrated her innocence.

62. Ms. Oden did not consent to her detention and was held against her will without probable cause or legal justification. The entire basis for her detention was Allen's false report — a report made despite readily accessible and visibly apparent evidence of Ms. Oden's lawful purchase.

63. Jane Doe, as a minor child who witnessed her mother's unlawful detention and was deprived of her mother's care and custody during the period of unlawful imprisonment, suffered distinct and independent damages as a proximate result,

including the loss of parental society, comfort, guidance, and presence during an acute crisis.

64. Defendants acted with actual malice. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the damages described herein and are entitled to compensatory and punitive damages.

**COUNT III**
**MALICIOUS PROSECUTION**
**(All Plaintiffs Against All Defendants)**

65. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

66. To establish malicious prosecution under Ohio law, a plaintiff must prove: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in the plaintiff's favor. *Crawford v. Euclid Nat'l Bank,* 19 Ohio St.3d 135, 138 (1985); *Al-Aroud v. McCoy*, 2021-Ohio-3832 (5th Dist. 2021).

67. MALICE: Defendant Allen maliciously instituted the criminal prosecution of Ms. Oden by filing a false theft report with the Massillon Police Department. Allen made this report knowing it was false or in reckless disregard of its falsity. Malice is independently and powerfully established by the following: (a) Allen reported Ms. Oden as a thief despite the visible presence of a curbside pickup label bearing her own name on the television box, placed there by a Walmart employee; (b) Walmart's own systems contained incontrovertible proof of her paid purchase, accessible to Allen as a Loss Prevention Officer; (c) Allen made no attempt whatsoever to consult Walmart's own records before filing the report; (d) the false accusation was the direct product of a conscious decision to report a Black

woman as a thief without any objective basis; and (e) upon information and belief, racial bias influenced Allen's decision to target Ms. Oden for criminal suspicion in circumstances where a similarly situated white customer would not have been reported. Together, these facts establish not merely negligence but willful, deliberate, or reckless indifference to Ms. Oden's rights — that is, actual malice.

68. LACK OF PROBABLE CAUSE: Walmart and Allen lacked any probable cause to report Ms. Oden for theft. Probable cause requires a reasonable basis for belief that a crime was committed. No such reasonable basis existed here: Walmart's own transaction database contained incontrovertible proof that Ms. Oden had paid for the television, and the television's packaging bore her name and order number placed there by Walmart's own employee. No reasonably competent Loss Prevention Officer who took any step to investigate — including simply reading the label on the box — could have formed a reasonable belief that Ms. Oden had stolen the merchandise.

69. FAVORABLE TERMINATION: The criminal prosecution terminated in Plaintiffs' favor when, on July 21, 2026, the Massillon Municipal Court entered a Dismissal Journal Entry in Case No. 2026-CRB-00029, dismissing all charges. The handwritten notation on the dismissal entry — "Defendant paid for the item online" — expressly confirms that the prosecution was terminated because the fundamental premise of the theft charge (that Ms. Oden did not purchase the television) was false. A dismissal entered on the affirmative basis that the accused has a complete defense to the charge constitutes a favorable termination for purposes of malicious prosecution. The court additionally entered an Order

sealing the record and restoring Ms. Oden to all rights and privileges, further evidencing the innocence-based nature of the termination.

70. As a direct and proximate result of Defendants' malicious prosecution, Plaintiffs suffered the damages described herein, including but not limited to legal fees, reputational harm, emotional distress, and lost wages. Defendants are liable for compensatory and punitive damages.

**COUNT IV**
**DEFAMATION PER SE / LIBEL PER SE**
**(Plaintiff Rachel Oden Against All Defendants)**

71. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

72. The elements of a defamation claim under Ohio law are: (1) a false statement of fact; (2) the statement was defamatory; (3) the statement was published to a third party; (4) the plaintiff suffered injury as a proximate result of the publication; and (5) the defendant acted with the requisite degree of fault. *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1996); *Hersh v. Mayer*, 2021-Ohio-2582, 176 N.E.3d 1135 (8th Dist. 2021).

73. Defamation per se occurs when material is defamatory on its face. Under Ohio law, a written statement that accuses any person of committing a crime is libel per se, and damages are presumed without proof of special damages. *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 110 (9th Dist. 2009); *Gosden v. Louis*, 116 Ohio App.3d 195, 206-207 (1996). An accusation of theft — a crime of dishonesty and moral turpitude — is among the most classic forms of defamation per se recognized under Ohio law.

74. Defendant Allen, acting within the scope of his employment with Walmart, made the following false written statement, memorialized in Massillon Police Department Field Case Report No. 2025-00031119: that "a female passed all points of purchase with a TV that she did not purchase" — an express, written accusation that Ms. Oden committed theft under R.C. § 2913.02.

75. This written statement was: (a) false — Ms. Oden had in fact purchased and fully paid for the television, a fact confirmed by Walmart's own payment systems and by the label Walmart's own employee had placed on the box; (b) defamatory per se on its face, as it accused Ms. Oden of committing the crime of theft; (c) published to a third party, having been communicated to a Massillon Police Officer, recorded in an official police report, and used to initiate criminal proceedings and effectuate Ms. Oden's arrest; and (d) the direct and proximate cause of Ms. Oden's arrest, criminal prosecution, reputational harm, and emotional distress.

76. Allen made the false statement with actual malice. He knew, or deliberately ignored, the fact that Ms. Oden's name appeared on the television box — placed there by his own employer's employee as part of a confirmed online order. A person who accuses another of theft while in possession of, or willfully blind to, evidence confirming the accused's innocence acts with actual malice as that concept is understood under Ohio defamation law. See *Al-Aroud v. McCoy*, 2021-Ohio-3832 (5th Dist. 2021) (affirming that a statement accusing an individual of involvement in theft from their employer constitutes defamation per se, warranting compensatory and punitive damages); *Hersh v. Mayer*, 2021-Ohio-2582, ¶¶ 42-43 (8th Dist. 2021) (false accusations causing reputational harm to a

person in their community constitute actionable defamation per se when made without reasonable basis for belief in truth).

77. The doctrine of absolute judicial privilege does not shield Defendants' initial report to police, which was made prior to the commencement of any judicial proceeding and is not protected by that privilege.

78. As a direct and proximate result of Defendants' defamatory statements, Ms. Oden suffered reputational harm, public humiliation, arrest, criminal prosecution, and severe emotional distress. Damages are presumed as a matter of law. Plaintiffs are entitled to compensatory and punitive damages.

**COUNT V**
**SLANDER PER SE**
**(Plaintiff Rachel Oden Against All Defendants)**

79. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

80. Under Ohio law, spoken words accusing a person of committing a crime involving moral turpitude — including theft, a crime of dishonesty — constitute slander per se, and damages are presumed. *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104 (9th Dist. 2009). The standard for actual malice in slander per se mirrors that in libel per se: a defendant who makes a spoken accusation knowing it is false, or with reckless disregard for its truth or falsity, acts with actual malice.

81. Defendant Allen, in the course of his verbal communications with Officer MA163 Richards and other persons at the Walmart Massillon Supercenter, made oral statements to the effect that Ms. Oden had stolen a television from Walmart —

that she had committed theft, a crime of moral turpitude and a crime of dishonesty under R.C. § 2913.02.

82. These oral statements were false. Ms. Oden had lawfully purchased and fully paid for the television, as confirmed by Walmart's own systems and the label its own employee had placed on the box. Allen made these oral statements with actual malice — he either knew the statements were false when he made them, given that he had access to Walmart's order records and was confronted with a box bearing Ms. Oden's name — or he acted with reckless disregard for their truth or falsity by making the statements without conducting any investigation into readily accessible, visible evidence of Ms. Oden's purchase.

83. Allen's slanderous oral statements were published to law enforcement officers, other store personnel, and other persons in the vicinity, and constituted slander per se, directly causing Ms. Oden's arrest, prosecution, humiliation, and reputational harm, for which damages are presumed as a matter of law.

84. As a direct and proximate result of Allen's slanderous statements, and Walmart's ratification and adoption of those statements, Ms. Oden suffered the damages described herein. Defendants are liable for compensatory and punitive damages.

**COUNT VI**
**FALSE LIGHT INVASION OF PRIVACY**
**(Plaintiff Rachel Oden Against All Defendants)**

85. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

86. The Ohio Supreme Court has recognized false light invasion of privacy as a cognizable cause of action. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-

2451, 866 N.E.2d 1051, ¶ 61. Ohio courts have expressly applied and sustained false light claims where a defendant published false statements about a plaintiff without a reasonable basis for believing them to be true. *Hersh v. Mayer*, 2021-Ohio-2582, 176 N.E.3d 1135, ¶¶ 42-43 (8th Dist. 2021).

87. Under Ohio law, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability for invasion of privacy if: (a) the false light in which the other was placed would be highly offensive to a reasonable person; and (b) the actor had knowledge of, or acted in reckless disregard as to, the falsity of the publicized matter and the false light in which the other would be placed. *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, syllabus.

88. Defendants gave publicity to false matter concerning Ms. Oden by: (a) reporting to law enforcement — a public authority — that Ms. Oden had committed the crime of theft; (b) causing the creation of an official police report containing the false accusation (Field Case Report No. 2025-00031119), which became a public record; (c) causing Ms. Oden's public arrest in a commercial establishment in front of bystanders, including her daughter; and (d) initiating a public criminal prosecution in the Massillon Municipal Court (Case No. 2026-CRB-00029) that was a matter of public record for approximately eight months. These acts of publicity placed Ms. Oden before the public — specifically, before law enforcement, court personnel, other customers, and any person with access to public court records — as a criminal thief.

89. The false light in which Defendants placed Ms. Oden — publicly identifying her as a thief who had stolen merchandise from Walmart — would be highly offensive to

a reasonable person. Being publicly branded as a criminal thief, subjected to a public arrest, and forced through a criminal prosecution as a consequence of that false characterization are among the most offensive and harmful reputational injuries a person can suffer. *Hersh v. Mayer*, 2021-Ohio-2582, ¶ 43 (8th Dist. 2021) (false accusations placing a person in a highly negative public light would be "highly offensive to a reasonable person").

90. Defendants had knowledge of the falsity of the matter publicized, or acted in reckless disregard of its falsity: (a) Allen knew that Walmart's systems confirmed Ms. Oden's purchase; (b) Allen knew or should have known that the television box bore Ms. Oden's name, placed there by Walmart's own employee; (c) no reasonable investigation of any kind was conducted before the false accusation was made; and (d) the information that would have revealed the falsity of Allen's accusation was literally visible on the face of the merchandise. The knowing or recklessly indifferent dissemination of false information that publicly branded Ms. Oden a criminal constitutes false light invasion of privacy under Ohio law.

91. As a direct and proximate result of Defendants' false light invasion of privacy, Ms. Oden suffered reputational harm, public humiliation, severe emotional distress, and all other damages described herein. Defendants are liable for compensatory and punitive damages.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Plaintiff Rachel Oden Against All Defendants)

92. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

93. To establish a claim for intentional infliction of emotional distress under Ohio law, a plaintiff must prove: (1) the defendant intended to cause emotional distress, or knew or should have known that the defendant's actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency; (3) the defendant's actions proximately caused psychological injury; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Yeager v. Local Union* 20, 6 Ohio St.3d 369, 374-375 (1983); *Al-Aroud v. McCoy*, 2021-Ohio-3832 (5th Dist. 2021); *Hersh v. Mayer*, 2021-Ohio-2582, ¶ 44 (8th Dist. 2021).

94. FIRST ELEMENT — INTENT OR KNOWLEDGE: Walmart knew or should have known that falsely accusing a customer of theft, causing her arrest in front of her young child, subjecting her to jail, and initiating criminal prosecution would result in severe emotional distress. Any reasonable person in Allen's position — confronted with a consumer holding merchandise whose packaging bore her own name placed there by the retailer's own employee — who nonetheless reported her as a thief would know with certainty that such a report would cause severe, lasting psychological harm.

95. SECOND ELEMENT — EXTREME AND OUTRAGEOUS CONDUCT: Defendants' conduct was extreme and outrageous in the highest degree, going beyond all possible bounds of decency. Defendants falsely accused a young Black woman of stealing a product whose box bore her own name — a name placed there by Walmart's own employee in connection with her confirmed, paid online order. They made no attempt to consult Walmart's own transaction records. The

false accusation resulted in Ms. Oden's public arrest in front of her eleven-year-old daughter, her detention in jail for 5.5 hours, booking and fingerprinting, and criminal prosecution lasting nearly eight months. This conduct is shocking, humiliating, and wholly intolerable in any civilized community — particularly when the evidence of the victim's innocence was literally printed on the product's packaging.

96. THIRD ELEMENT — PROXIMATE CAUSE: Defendants' false accusation and the resulting arrest, imprisonment, and prosecution were the direct and proximate cause of Ms. Oden's severe psychological injury. Since the incident, Ms. Oden experiences deep anxiety, fear, hypervigilance, and traumatic stress responses triggered by the sight of police vehicles and law enforcement, affecting her ability to function in daily life and her relationship with her daughter.

97. FOURTH ELEMENT — SERIOUS EMOTIONAL DISTRESS: Ms. Oden has suffered serious, severe, and debilitating emotional distress that no reasonable person could be expected to endure. She lives in constant fear of another false accusation. Her ability to engage in normal commercial and social activities has been deeply impaired. She is receiving, and will continue to require, professional psychological counseling and therapy.

98. As a direct and proximate result of Defendants' extreme and outrageous conduct, Ms. Oden has suffered severe and ongoing emotional distress and is entitled to compensatory and punitive damages.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — MINOR PLAINTIFF
## (Plaintiff Jane Doe Against All Defendants)

99. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

100. A minor child who is present and directly witnesses a parent's wrongful arrest and who suffers serious emotional distress as a proximate result of the defendant's extreme and outrageous conduct has a cognizable claim for intentional infliction of emotional distress under Ohio law. Yeager v. Local Union 20, 6 Ohio St.3d 369 (1983).

101. FIRST ELEMENT: Walmart knew or should have known that causing the arrest of a parent in front of her young child would result in severe and lasting emotional distress to that child. Defendants specifically knew that Ms. Oden was accompanied by her daughter, which heightened their duty to act with care and made the harm to Jane Doe both foreseeable and, in the circumstances here, practically certain.

102. SECOND ELEMENT: Forcing an eleven-year-old child to watch her mother — a law-abiding, innocent woman whose innocence was provable from the product box in her possession — be publicly accused of theft, physically restrained, and taken into police custody is conduct that goes beyond all possible bounds of decency and is utterly intolerable in a civilized community.

103. THIRD ELEMENT: Defendants' false accusation and the resulting arrest of Ms. Oden directly and proximately caused Jane Doe's serious psychological injury. Jane Doe directly perceived, in real time, her mother's public humiliation, physical restraint, and removal by police. As an African American child raised with an acute awareness of the dangers police encounters pose for Black people, Jane Doe experienced not merely sadness or fear but the embodied terror of a

child who understands at a visceral level what police encounters can mean for Black families in America.

104. FOURTH ELEMENT: Jane Doe has suffered serious, severe, and debilitating emotional distress, including nightmares, sleep disruption, hypervigilance, fear of law enforcement, and anxiety in public spaces. These effects are likely to persist through adolescence and into adulthood.

105. As a direct and proximate result of Defendants' extreme and outrageous conduct, Jane Doe has suffered severe and ongoing emotional distress and is entitled to compensatory and punitive damages.

**COUNT IX**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS — MINOR PLAINTIFF**
**(Plaintiff Jane Doe Against All Defendants)**

106. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

107. Ohio law recognizes claims for negligent infliction of emotional distress where the plaintiff either (1) was a bystander to a negligently caused traumatic event, or (2) was placed in reasonable apprehension of actual physical peril. *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131 (1983); *Paugh v. Hanks*, 6 Ohio St.3d 72 (1983).

108. BYSTANDER THEORY: Defendants' negligent conduct — specifically, the failure to investigate Ms. Oden's purchase before reporting her to police despite visible, on-box evidence of her innocence — caused a sudden, traumatic confrontation and arrest that constituted a shock-producing traumatic event. Jane Doe was not a remote observer; she was physically present at the scene, had direct and

contemporaneous sensory perception of the incident, and is the daughter of the primary victim. She witnessed the sudden, shocking event of her mother's public false accusation, physical restraint, and arrest in real time. This satisfies Ohio's bystander theory for negligent infliction of emotional distress.

109. FEAR OF ACTUAL PHYSICAL PERIL THEORY: Jane Doe was placed in genuine and objectively reasonable fear of actual physical peril. As an eleven-year-old African American girl, Jane Doe had a well-founded fear that her mother faced the risk of physical harm at the hands of law enforcement. See *United States v. Knights*, 989 F.3d 1281, 1305 (11th Cir. 2021) (Rosenbaum, J., concurring) (collecting evidence that Black Americans are 2.5 times more likely to be killed by police than white Americans). An eleven-year-old Black child watching her mother be confronted by police in connection with a criminal accusation is not imagining a theoretical risk; she is experiencing an objectively reasonable, evidence-based fear that the encounter could escalate.

110. Defendants owed a duty of care to Jane Doe as a foreseeable bystander whose parent they were causing to be arrested in a public place. Defendants breached this duty by failing to exercise reasonable care in investigating the alleged theft before reporting it to law enforcement.

111. As a direct and proximate result of Defendants' negligent conduct, Jane Doe has suffered and will continue to suffer severe emotional distress that no reasonable child of similar age, background, and experience could be expected to endure, and is entitled to all compensatory damages proven at trial.

**COUNT X**
**NEGLIGENCE**
**(All Plaintiffs Against All Defendants)**

112. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

113. Defendants owed a duty of reasonable care to Ms. Oden as a Walmart customer who had completed a lawful online purchase and arrived to collect her merchandise, and to Jane Doe as a minor child accompanying her, to avoid subjecting them to unlawful, harmful, and distressing conduct based on false information.

114. Defendants breached this duty of care by, among other things: (a) failing to verify whether Ms. Oden had a lawful online purchase record before reporting her to law enforcement; (b) failing to check Walmart's own transaction systems, order management databases, or pickup records prior to filing a police report; (c) failing to examine — or willfully ignoring — the merchandise's curbside pickup label, which bore Ms. Oden's name and order number in plain view on the face of the product; (d) failing to implement and follow reasonable loss prevention policies requiring verification of purchase records prior to any criminal report; and (e) filing a false report with law enforcement that directly caused Ms. Oden's arrest, detention, and prosecution.

115. Defendants' breach of duty was the direct and proximate cause of Plaintiffs' injuries, including but not limited to Ms. Oden's wrongful arrest, imprisonment, prosecution, reputational harm, and emotional distress, and Jane Doe's emotional distress and trauma.

116. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered substantial damages as described herein.

## COUNT XI
## GROSS NEGLIGENCE
## (All Plaintiffs Against All Defendants)

117. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

118. Defendants' conduct constituted gross negligence — negligence exhibiting a degree of culpability greater than ordinary negligence, reflecting a wanton and reckless disregard for the rights and safety of Ms. Oden and Jane Doe.

119. The existence of irrefutable proof of Ms. Oden's lawful purchase in Walmart's own systems, combined with her name and order number appearing on the product's label in plain view — a label generated and placed there by Walmart's own employee — made it grossly negligent for Allen to report Ms. Oden as a thief without conducting any inquiry whatsoever. The failure to take even the most basic step of reading the label on the box before accusing the person holding it of theft reflects a reckless, wanton, and utter disregard for the rights and well-being of Ms. Oden and her child.

120. Walmart's systemic failure to implement, enforce, and require compliance with reasonable policies mandating verification of purchase records — including the label generated by Walmart's own systems and affixed by its own employees — before initiating criminal reports against customers reflects gross institutional negligence and wanton disregard for the rights of its customers.

121. As a direct and proximate result of Defendants' gross negligence, Plaintiffs have suffered substantial damages, and Defendants are liable for compensatory and punitive damages.

## COUNT XII

**BREACH OF SPECIAL DUTY**
**(All Plaintiffs Against Defendant Walmart Inc.)**

122. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

123. Walmart occupied a special position of duty with respect to Ms. Oden that exceeded the ordinary duty owed to a casual visitor or general member of the public. Walmart's online ordering system created a specific, individualized contractual and transactional relationship with Ms. Oden: it accepted her order, processed her payment, confirmed the transaction, generated a curbside pickup label bearing her name through its own automated systems, directed a Walmart employee to affix that label to her television, and issued an invitation to collect the merchandise. These acts created a special duty — a duty arising from the transaction itself — to treat Ms. Oden as an identified, verified paying customer and to take affirmative steps to protect her from harm arising from Walmart's own fulfillment activities.

124. This special duty included, but was not limited to: (a) the duty to honor the confirmed transaction and ensure Ms. Oden could collect her purchase without interference; (b) the duty to ensure that Walmart's loss prevention personnel were aware of, and acted consistently with, the fulfilled transaction records associated with any merchandise subject to a loss prevention inquiry; (c) the duty not to make criminal reports against a customer whose transaction Walmart had itself confirmed and documented in its own systems; and (d) the duty to consult Walmart's own transaction records, including the curbside pickup label system

that bore the customer's name, before initiating any criminal action against a customer retrieving merchandise bearing her name.

125. Walmart breached this special duty by: (a) allowing its Loss Prevention Officer to confront Ms. Oden without providing him access to, or requiring him to consult, the transaction records Walmart's own systems had generated for her order; (b) permitting Allen to file a criminal theft report against Ms. Oden while Walmart's own label — bearing her name and placed on the box by Walmart's own employee — remained on the product; (c) failing to implement any cross-reference protocol requiring Loss Prevention Officers to check the curbside pickup label system before reporting curbside pickup customers for theft; and (d) failing to retract, correct, or mitigate the consequences of Allen's false report after the existence of Ms. Oden's valid order was or became apparent.

126. Walmart's breach of this special duty was the direct and proximate cause of Ms. Oden's arrest, prosecution, and the harm to both Plaintiffs described herein.

127. As a direct and proximate result of Walmart's breach of its special duty, Plaintiffs have suffered substantial damages and are entitled to compensatory and punitive damages.

## COUNT XIII
## NEGLIGENT TRAINING, SUPERVISION, AND RETENTION
## (All Plaintiffs Against Defendant Walmart Inc.)

128. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

129. Defendant Walmart Inc. had a duty to properly train, supervise, and retain its Loss Prevention Officers, including Defendant Allen, in the reasonable and lawful

conduct of loss prevention activities, including the proper protocols required before reporting a suspected theft to law enforcement.

130. Walmart breached this duty by: (a) failing to train Allen and other Loss Prevention Officers to check and cross-reference Walmart's own transaction records — including the curbside pickup order and label system — before reporting any customer for theft; (b) failing to implement and enforce policies requiring Loss Prevention Officers to read and acknowledge visible purchase documentation — such as a curbside label bearing the customer's name — before initiating a criminal report; (c) failing to adequately supervise Allen's conduct in this incident; and (d) upon information and belief, retaining Allen despite knowledge or reason to know of deficiencies in his loss prevention practices.

131. Walmart's negligent training and supervision were the direct and proximate cause of Allen's false theft report, Ms. Oden's wrongful arrest and prosecution, and the resulting harm to Plaintiffs.

132. As a direct and proximate result of Walmart's negligent training, supervision, and retention, Plaintiffs have suffered substantial damages as described herein.

**COUNT XIV**
**ABUSE OF PROCESS**
**(All Plaintiffs Against All Defendants)**

133. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

134. The tort of abuse of process under Ohio law consists of three elements: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted

from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294 (1994).

135. To the extent the criminal theft process was set in motion with any arguable probable cause, that process was perverted to accomplish an ulterior purpose: namely, the punishment or coercion of a customer subject to a disputed access restriction through the mechanism of a criminal theft prosecution — a purpose for which the criminal theft process is not designed. The criminal theft process exists to prosecute individuals who unlawfully take merchandise they have not purchased. It is not a mechanism for enforcing private trespass bans or retaliating against customers who completed lawful online purchases. By using the theft prosecution to punish Ms. Oden for collecting merchandise she had lawfully purchased and paid for, Defendants perverted the legal process to an improper end.

136. Direct damage resulted from the wrongful use of process, including Ms. Oden's arrest, imprisonment, prosecution, legal fees, emotional distress, and all other damages described herein.

137. As a direct and proximate result of Defendants' abuse of process, Plaintiffs have suffered substantial damages.

**COUNT XV**
**BREACH OF CONTRACT**
**(Plaintiff Rachel Oden Against Defendant Walmart Inc.)**

138. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

139. On or about December 1, 2025, Plaintiff Rachel Oden and Defendant Walmart Inc. entered into a valid, binding, and enforceable contract for the purchase and

curbside pickup of one onn 43-inch television, Model WFD43S-0830, for $94.79 total, Order No. 2000140-14237260, to be picked up at the Walmart Massillon Supercenter. This contract was formed through completion of the online ordering process at Walmart.com and payment in full via Ms. Oden's debit card.

140. Ms. Oden fully performed her obligations under the contract by tendering payment in the amount of $94.79 in full.

141. Walmart breached the contract by: (a) failing to ensure that Ms. Oden could retrieve her purchased merchandise free from harassment, false accusation, and unlawful detention; (b) subjecting Ms. Oden to a false accusation of theft while she was exercising her contractual right to collect merchandise she had lawfully purchased and paid for; (c) causing Ms. Oden's arrest, imprisonment, and criminal prosecution in direct conflict with her contractual right to receive and enjoy the property she had purchased; and (d) having its own employee generate and affix a curbside label bearing Ms. Oden's name to the merchandise, and then permitting its Loss Prevention Officer to falsely accuse her of stealing that same labeled merchandise.

142. As a direct and proximate result of Walmart's breach of contract, Ms. Oden suffered damages, including economic harm, the loss of the benefit of her bargain, and all other damages proximately flowing from the breach.

## COUNT XVI
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (Plaintiff Rachel Oden Against Defendant Walmart Inc.)

143. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

144. Every contract in Ohio imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. *Stone v. National City Bank*, 106 Ohio App.3d 212 (1995).

145. The online purchase contract between Ms. Oden and Walmart carried an implied covenant that Walmart would deal with Ms. Oden honestly, in good faith, and without taking actions that would destroy the reasonable expectations of the parties — specifically, Ms. Oden's reasonable expectation that she could collect her paid merchandise without being accused of stealing it.

146. Walmart breached the implied covenant by: (a) accepting Ms. Oden's payment through its online platform; (b) confirming the order, generating a curbside pickup label bearing Ms. Oden's name through its own systems, and having its employee affix that label to the television; (c) then causing Ms. Oden to be falsely accused of theft, arrested, and prosecuted when she arrived to pick up the merchandise she had purchased; and (d) failing to take any steps to verify its own transaction records before initiating a criminal report that directly contradicted the existence of a lawful contractual relationship with Ms. Oden.

147. As a direct and proximate result of Walmart's breach of the implied covenant of good faith and fair dealing, Ms. Oden suffered substantial damages as described herein.

**COUNT XVII**
**CIVIL CONSPIRACY**
**(All Plaintiffs Against All Defendants)**

148. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

149. A civil conspiracy under Ohio law requires proof of a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damage. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998).

150. Defendants Walmart Inc. and Timothy Chase Allen conspired and acted in malicious combination to accomplish the following: (a) the false accusation of theft against Ms. Oden; (b) the filing of a false police report; (c) the initiation and continuation of a criminal prosecution against Ms. Oden; and (d) the resulting harm to Plaintiffs. Allen, as a Walmart employee acting within his employment, coordinated with Walmart's corporate loss prevention apparatus in making the false theft report. Walmart Inc., through its policies, authorization structure, and failure to investigate or correct Allen's false report after the fact, participated in and ratified the wrongful acts against Ms. Oden.

151. As a direct and proximate result of Defendants' civil conspiracy, Plaintiffs have suffered substantial damages as described herein.

## COUNT XVIII
## RACIAL DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS — 42 U.S.C. § 1981
## (All Plaintiffs Against All Defendants)

152. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

153. 42 U.S.C. § 1981 guarantees to all persons within the United States the same right to make and enforce contracts as is enjoyed by white citizens. The statute expressly protects the making, performance, modification, and termination of

contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

154. Plaintiff Rachel Oden is an African American woman and a member of a racial minority protected by 42 U.S.C. § 1981.

155. Plaintiff Rachel Oden entered into and fully performed a valid consumer contract with Defendant Walmart Inc. for the purchase of a television through Walmart's online platform on December 1, 2025, Order No. 2000140-14237260.

156. Defendants intentionally discriminated against Ms. Oden on the basis of her race in the enforcement and enjoyment of this contractual relationship by: (a) subjecting her to a false accusation of theft and criminal reporting while she was exercising her contractual right to pick up merchandise she had purchased and paid for; (b) failing to verify Ms. Oden's purchase records before filing a criminal report — a failure that, upon information and belief, would not have occurred had Ms. Oden been white; (c) applying loss prevention practices in a racially discriminatory manner, targeting a Black customer for suspicion of theft without any objective evidence independent of her race and in the face of visible exculpatory evidence; and (d) causing Ms. Oden's arrest, imprisonment, and prosecution while she was exercising a contractual right.

157. The totality of the circumstances — a young Black woman picking up a television via a paid curbside order, with her name on the box placed by Walmart's own employee, confronted without any investigation, and reported to police as a thief — is consistent with a pattern of racially discriminatory loss prevention practices that disproportionately target Black customers.

158. Jane Doe, as the minor daughter of Ms. Oden who was present and directly harmed by the discriminatory treatment of her mother, also suffered harm as a result of the racial discrimination directed at her mother and at their family.

159. As a direct and proximate result of Defendants' violation of 42 U.S.C. § 1981, Plaintiffs have suffered substantial damages, and Defendants are liable for compensatory damages, punitive damages, and attorneys' fees and costs as authorized by 42 U.S.C. § 1988.

**COUNT XIX**
**LOSS OF PARENTAL CONSORTIUM**
**(Plaintiff Jane Doe Against All Defendants)**

160. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

161. Ohio law recognizes a minor child's cause of action for loss of parental consortium. *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, paragraph two of the syllabus (1993). Consortium encompasses services, society, companionship, comfort, love, guidance, and solace. *Rolf v. Tri State Motor Transit Co.*, 91 Ohio St.3d 380, 383 (2001). The essence of a parental consortium claim is that a child is compensated for harm done or losses suffered as a result of injury to the parent and to the parent-child relationship. *Rolf*, 91 Ohio St.3d at 383.

162. As a direct and proximate result of Defendants' tortious, malicious, and unlawful conduct, the parent-child relationship between Jane Doe and her mother, Rachel Monique Oden, has been seriously and materially impaired. Specifically: (a) Ms. Oden was physically removed from Jane Doe's presence for approximately 5.5 hours of unlawful detention, during which time Jane Doe was without the care,

protection, and comfort of her mother; (b) Ms. Oden's severe and ongoing emotional trauma — caused entirely by Defendants' conduct — has impaired her ability to provide Jane Doe with the same quality of parental society, guidance, comfort, and emotional availability she previously provided; (c) the shared trauma of the incident has disrupted the normal, healthy parent-child relationship between Ms. Oden and Jane Doe; and (d) the necessity for Ms. Oden to attend court proceedings and manage the ongoing effects of the prosecution over approximately eight months further deprived Jane Doe of the full society, guidance, and presence of her parent.

163. Under Ohio law, a minor child whose parent's capacity to provide society, companionship, comfort, love, guidance, and solace has been impaired by the tortious conduct of a defendant has a distinct cause of action for the loss of those parental consortium elements, even when the parent is not killed. *Gallimore*, 67 Ohio St.3d at paragraph two of the syllabus. The loss of parental consortium experienced by Jane Doe is real, measurable, and continuing — not merely derivative of, but distinct from, her claims for emotional distress.

164. Jane Doe's loss of parental consortium began the moment she watched her mother be publicly accused, physically restrained, and taken into custody. It continued throughout the 5.5-hour detention, throughout the eight-month prosecution, and persists to the present as Ms. Oden continues to suffer the psychological effects of Defendants' conduct that diminish her capacity to provide the full measure of parental society, comfort, guidance, and solace to her daughter.

165. As a direct and proximate result of Defendants' tortious conduct, Jane Doe has suffered and continues to suffer the loss of her mother's consortium, including the loss of society, companionship, comfort, love, guidance, and solace, and is entitled to compensatory and punitive damages therefor.

**COUNT XX**
**LOSS OF FILIAL CONSORTIUM**
**(Plaintiff Rachel Oden Against All Defendants)**

166. Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

167. Ohio law recognizes a parent's cause of action for loss of filial consortium against a third-party tortfeasor who intentionally or negligently causes injury to the parent-child relationship. *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244, paragraph one of the syllabus (1993). Consortium includes, among other elements, services, society, companionship, comfort, love, guidance, and solace. *Rolf v. Tri State Motor Transit Co.*, 91 Ohio St.3d 380, 383 (2001).

168. As a direct and proximate result of Defendants' tortious, malicious, and unlawful conduct, Plaintiff Rachel Oden has suffered and continues to suffer the loss of the filial consortium she shares with her minor daughter, Jane Doe. Specifically: (a) Ms. Oden was forcibly separated from her daughter during the period of her unlawful arrest and 5.5-hour detention, during which time she was unable to provide care, comfort, guidance, or protection to Jane Doe; (b) Jane Doe has suffered severe psychological trauma as a direct result of Defendants' conduct — trauma that has materially altered Jane Doe's capacity for normal childhood social, emotional, and developmental function, and that has disrupted the

parent-child relationship between Ms. Oden and her daughter; (c) Ms. Oden is now compelled to witness, manage, and attempt to remediate the ongoing psychological and developmental harm that Defendants inflicted on her daughter — harm that has permanently altered the texture and quality of their parent-child relationship; and (d) the shared trauma of the event has imposed upon Ms. Oden the burden of addressing Jane Doe's nightmares, anxiety, fear of law enforcement, and hypervigilance, in addition to her own, in a manner that has materially impaired their mutual enjoyment of a healthy, normal parent-child relationship.

169. The gist of a claim for loss of filial consortium is that the parent is compensated for harm done and losses suffered as a result of injury to the parent's child and to the parent-child relationship. *Gallimore*, 67 Ohio St.3d at 252. Here, Defendants' tortious conduct directly injured Jane Doe — causing her severe psychological trauma — and directly injured the parent-child relationship between Ms. Oden and Jane Doe by: (a) forcibly disrupting their physical presence and bond during the arrest and detention; and (b) causing ongoing psychological injury to Jane Doe that has impaired the mutual enjoyment of their relationship.

170. As a direct and proximate result of Defendants' tortious conduct, Ms. Oden has suffered and continues to suffer the loss of her daughter's filial consortium, and is entitled to compensatory and punitive damages therefor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Rachel Monique Oden, individually and as Parent, Legal Guardian of Jane Doe, a Minor, respectfully pray that this Court enter judgment in

their favor and against Defendants Walmart Inc. and Timothy Chase Allen, jointly and severally, as follows:

A. Compensatory damages in an amount in excess of $2,000,000.00, including but not limited to damages for wrongful arrest, false imprisonment, malicious prosecution, defamation, slander, false light invasion of privacy, breach of contract, breach of special duty, intentional and negligent infliction of emotional distress, loss of parental consortium (Jane Doe), loss of filial consortium (Rachel Oden), reputational harm, lost wages, medical and therapeutic expenses (past and future), legal fees incurred in connection with the criminal prosecution, and all other compensable losses suffered by Plaintiffs;

B. Punitive damages in an amount in excess of $2,000,000.00 to punish Defendants for their malicious, willful, wanton, and reckless conduct — conduct carried out with actual knowledge of facts establishing Ms. Oden's innocence — and to deter Defendants and others similarly situated from engaging in similar conduct in the future;

C. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable statute or rule;

D. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

E. Injunctive relief: an order requiring Defendant Walmart Inc. to (i) conduct a comprehensive audit of its loss prevention policies and procedures for reporting suspected theft to law enforcement; (ii) revise such policies to require mandatory cross-referencing of transaction

records, curbside pickup order systems, and online order records — including any customer name label appearing on merchandise — before any criminal report is filed against a customer; (iii) provide remedial training to all Loss Prevention Officers on racially non-discriminatory loss prevention practices and the requirements of 42 U.S.C. § 1981; and (iv) remove any unsubstantiated trespass ban or restriction on Plaintiffs that was entered without proper legal process and adequate notice;

F. Costs of this action; and

G. Such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

*/s/ Alex L. Bodiford*
**Alex L. Bodiford, Esq.**
**Ohio Bar No. 0105076**
**Bodiford Legal Group LLC**
388 S. Main Street, Suite 440
Akron, Ohio 44311
Telephone: (330) 800-8810
attorneyalexbodiford@gmail.com
*Attorney for Plaintiffs Rachel Monique Oden and Jane Doe, a Minor*

**JURY DEMAND**

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES AND CLAIMS SO TRIABLE PURSUANT TO RULE 38(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Respectfully submitted,

*/s/ Alex L. Bodiford*

**Alex L. Bodiford, Esq.**
**Ohio Bar No. 0105076**
**Bodiford Legal Group LLC**
388 S. Main Street, Suite 440
Akron, Ohio 44311
Telephone: (330) 800-8810
attorneyalexbodiford@gmail.com
*Attorney for Plaintiffs Rachel Monique Oden and Jane Doe, a Minor*